# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

PAULYNE W.[1],

        Plaintiff,

   v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Defendant.

Case No. 3:20-cv-1627-SI

**OPINION AND ORDER**

H. Peter Evans, EVANS & EVANS, PC, 222 NE Park Plaza Drive, Suite 113, Vancouver,
WA 98684. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief,
UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204;
Benjamin J. Groebner, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL,
Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

     Plaintiff Paulyne W. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration (Commissioner) denying Plaintiff's application for

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. When applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). For the

reasons below, the Court REVERSES AND REMANDS the case for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see

also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.

Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must

uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a

rational reading of the record, and this Court may not substitute its judgment for that of the

Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th

Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a

ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for SSI on April 23, 2018, alleging disability beginning on January 1,

2006. AR 195. Plaintiff's date of birth is June 27, 1968, and she was 37 years old as of the

alleged disability onset. AR 196. The agency denied her claim both initially and upon

reconsideration, and Plaintiff requested a hearing. AR 231, 238, 242. Plaintiff appeared for a

hearing before an ALJ in November 2019. AR 31. On December 23, 2019, the ALJ issued a

decision denying Plaintiff's claim for benefits. AR 13-26. Plaintiff requested review of the ALJ's

decision, which the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final

decision of the agency and Plaintiff seeks judicial review of that decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous

period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 24, 2018. AR 15. At step two, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease, and hypermobility syndrome. AR 15. At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18. The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform:

> light work as defined in 20 CFR 416.967(b) except: She can frequently climb ramps and stairs. She can occasionally climb ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch and crawl. She should avoid concentrated exposure to hazards (such as unprotected heights and exposed moving mechanical parts). She has sufficient concentration, persistence, and pace to complete simple, routine tasks as well as some complex tasks (up to SVP 4) for a normal workday and workweek. She is able to work independently, but not in close cooperation with or close proximity to coworkers. She can engage in brief and structured interactions with the general public.

AR 18. Based on these limitations, at step four, the ALJ found that Plaintiff could not perform any past relevant work. AR 24. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including routing clerk (50,000 jobs in the national economy), tagger (22,000 jobs in the national economy), collator (20,000 jobs in the national economy). AR 25. The ALJ thus concluded that Plaintiff was not disabled. AR 25.

## DISCUSSION

Plaintiff argues the ALJ erred by: (A) failing to designate Plaintiff's mental impairments as severe impairments; (B) failing to find Plaintiff disabled under Listing 14.09D; (C) discounting Dr. Stephen Meharg's medical opinion; (D) discounting Plaintiff's symptom testimony; (E) and failing to find Plaintiff disabled under the Medical-Vocational Guidelines and failing to present the Vocational Expert with complete hypotheticals.

### A.  Step Two Findings

Plaintiff argues that the ALJ erroneously concluded that Plaintiff did not have any severe mental health impairments. The step two inquiry is a "*de minimus* screening device to dispose of groundless claims." *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. 2287. "Step two impairments may not be found severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3. Omissions at step two are harmless error if step two is decided in the claimant's favor and the ALJ incorporates all the claimant's limitations into the RFC. *Burch*, 400 F.3d at 682-84.

Here, the ALJ conducted a thorough analysis of Plaintiff's mental health impairments using the psychiatric review technique as 20 C.F.R. § 416.920a requires. *See* AR 15-18. The ALJ concluded that Plaintiff's mental health impairments were not severe because Plaintiff's medical records and daily activities showed no more than a mild limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing herself. *See* AR 15-18; 20 C.F.R. § 416.920a(c)(3). The Court will not disturb the ALJ's rational reading of the record. *Batson*, 359 F.3d at 1196.

Regardless, any error at step two is harmless because the ALJ considered Plaintiff's non-severe mental health impairments throughout the sequential process. In formulating Plaintiff's RFC, the ALJ considered Plaintiff's mental health impairments and found that Plaintiff can only sometimes perform complex tasks, cannot work in close cooperation with coworkers, cannot work in close proximity to coworkers, and can engage in brief and structured interactions with the general public. *See* AR 23-24 (evaluation of Plaintiff's mental health impairments); AR 18-19 (RFC finding). Because the ALJ evaluated Plaintiff's mental health impairments when formulating the RFC, any error in finding those impairments not severe was harmless. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (concluding that any step two error was harmless and stating that the RFC "*should* be exactly the same regardless of whether certain impairments are considered "severe" or not"); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (concluding step two error was harmless because the ALJ discussed the impairment during later steps).

**B.  Listing 14.09D**

Plaintiff argues that the ALJ committed harmful error by failing to analyze whether Plaintiff's fibromyalgia, alone or in combination with her other impairments, medically equaled Listing 14.09D. Plaintiff argues that SSR 12-2p imposes an obligation on the ALJ to articulate why a claimant's medically determinable impairment of fibromyalgia in combination with other impairments does or does not medically equal Listing 14.09D. SSR 12-2p provides that at step three:

> we consider whether the person's impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1). FM cannot meet a listing in appendix 1 because FM is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically

> equals a listing in combination with at least one other medically
> determinable impairment.

SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012). This excerpt explains that because

fibromyalgia is not a listed impairment, the ALJ at step three determines only whether

fibromyalgia "medically equals" a listing. SSR 12-2p does not, however, impose an obligation

on the ALJ to articulate why a claimant's medically determinable impairment of fibromyalgia in

combination with other impairments does or does not medically equal Listing 14.09D. Instead,

SSR 12-2p offers Listing 14.09D as an example of a listing that may medically equal

fibromyalgia.

Regardless, even if the ALJ did err at step three, Plaintiff has not shown that error was

harmful. Plaintiff has offered no theory to support her argument that a combination of her

impairments medically equal any listing. Plaintiff has identified no evidence in the record and

has not explained why she meets each element of any listing. Instead, she argues that "when the

record is properly considered," the combination of "fibromyalgia, migraine headaches,

hypermobility, degenerative disc disease, hand arthritis/trigger finger, neuropathy, and left foot

fracture" medically equals a listing, which requires a finding that she is disabled. ECF 10, at 15.

Plaintiff has not met her burden to show harmful error. *Ludwig v. Astrue*, 681 F.3d 1047, 1054

(9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but

also that it affected his 'substantial rights,' which is to say, not merely his procedural rights."

(quoting *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009))).

## C.  Dr. Stephen Meharg's Medical Opinion

Plaintiff argues that the ALJ improperly discounted the medical opinion of her examining

physician, Dr. Meharg. Because Plaintiff filed her application for benefits after March 27, 2017,

Federal Regulation 20 C.F.R. § 416.920c governs how the ALJ evaluates medical opinion

evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed.

Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical

opinions but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The

new regulations purport to eliminate the hierarchy of medical opinions and state that the agency

does not defer to any type of medical opinion, even those from treating sources. The new

regulations purport to eliminate the agency's "treating source rule," which gave special

deference to uncontradicted opinions from treating sources. Instead, the ALJ primarily considers

the "supportability" and "consistency" of the opinions. *Id.* § 416.920c(b)-(c). Supportability is

determined by whether the opinion is supported by relevant objective medical evidence and the

source's explanation for the opinion. *Id.* § 416.920c(c)(1). Consistency is determined by how

consistent the opinion is with evidence from other medical and nonmedical sources. *Id.*

§ 416.920c(c)(2).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the

medical opinions" and "explain how [they] considered the supportability and consistency

factors." 20 C.F.R. § 416.920c(b). The ALJ is not required to explain how he or she considered

other secondary medical factors, unless he or she finds that two or more medical opinions about

the same issue are equally well-supported and consistent with the record but not identical. 20

C.F.R. § 416.920c(b)(2)-(3). The Court must continue to consider whether the ALJ's analysis is

supported by substantial evidence, which is a statutory requirement unaffected by the change in

regulation. *See* 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

Plaintiff contends that even under these new regulations, the ALJ must still provide

specific and legitimate reasons supported by substantial evidence for discounting medical

opinions, because that standard is required under the statutory "substantial evidence"

requirement and not the regulatory framework of the hierarchy of medical opinions. The

Commissioner does not dispute that substantial evidence must support the ALJ's decision. The

Commissioner argues that because the new regulations eliminate the hierarchy of medical

opinions that existed under the old regulations, the case law setting different requirements to

reject medical opinions based on that hierarchy (such as "specific and legitimate reasons" for

contradicted examining physicians) is now inapposite.

    This issue was recently addressed by another district court:

> In 2017, the Commissioner issued new regulations governing how
> ALJs are to evaluate medical opinions. *See* Revisions to Rules
> Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-
> 01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations,
> for claims filed on or after March 27, 2017, the Commissioner
> "will not defer or give any specific evidentiary weight . . . to any
> medical opinion(s) . . . including those from [the claimant's]
> medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The
> ALJ must nonetheless explain with specificity how he or she
> considered the factors of supportability and consistency in
> evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)-(b),
> 416.920c(a)-(b). That explanation must be legitimate, as the Court
> will not affirm a decision that is based on legal error or not
> supported by substantial evidence. *See Trevizo v. Berryhill*, 871
> F.3d 664, 674 (9th Cir. 2017). Thus, the regulations require the
> ALJ to provide specific and legitimate reasons to reject a doctor's
> opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-
> 461 RSM, 2020 WL 6581012 at *3 (W.D. Wash. Nov. 10, 2020)
> (unpublished opinion) (finding that the new regulations do not
> clearly supersede the "specific and legitimate" standard because
> the "specific and legitimate" standard refers not to how an *ALJ*
> should weigh or evaluate opinions, but rather the standard by
> which the *Court* evaluates whether the ALJ has reasonably
> articulated his or her consideration of the evidence).

*Terry B. v. Acting Comm'r of Soc. Sec.*, 2021 WL 6072708, at *2 (W.D. Wash. Dec. 23, 2021)

(alterations and emphasis in original).

    The new regulations require an ALJ to evaluate medical opinion evidence based

primarily on consistency and supportability irrespective of whether a "treating," "examining," or

"reviewing" source gave the opinion. That does not mean, however, that the ALJ does not need to provide specific and legitimate reasons for why the medical opinion is or is not consistent with or supported by the evidence. *See Carrie R. v. Comm'r*, 2022 WL 35777, at *4 (D. Or. Jan. 4, 2022) ("The new regulations do not, however, upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain binding on this Court. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so . . . . In other words, while the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review." (citations omitted)). Until the Ninth Circuit provides further guidance on this issue, the Court agrees that the ALJ must still provide specific and legitimate reasons in analyzing medical opinions under the new regulations.[2]

The ALJ rejected Dr. Meharg's opinion about Plaintiff's ability to interact with supervisors, coworkers, and the public because it was inconsistent with evidence in the record. AR 24. Dr. Meharg conducted a psychological evaluation of Plaintiff. Dr. Meharg concluded that Plaintiff had a "moderate" restriction in her ability to interact appropriately with supervisors. AR 1148. The ALJ found this opinion was not consistent with Plaintiff's representation that she had "no problem" interacting with authority figures such as "bosses." *See* AR 331. Dr. Meharg also indicated that Plaintiff had a "moderate" restriction in her ability to interact with coworkers. AR 1148. The ALJ found this opinion was not consistent with Plaintiff's representation that she

---

[2] At this time, the Court expresses no opinion about the validity of the other standards for reviewing medical evidence previously established by the Ninth Circuit, such as the "clear and convincing" standard for considering uncontradicted evidence by a treating physician.

had no problems interacting with others. AR 331. Finally, Dr. Meharg opined that Plaintiff had

only a "slight" restriction in her ability to interact with the public. AR 1148. The ALJ found this

opinion was not consistent with records showing that Plaintiff had more than a slight limitation

in interacting with the public. Progress notes of Dr. Diana Boss report that Plaintiff "continues to

have difficulty in managing crowded places" and that on one occasion, she had to leave a social

gathering when it "became more crowded." AR 1168.

 Plaintiff argues that the ALJ improperly discounted Dr. Meharg's opinion because

Plaintiff's symptoms of dysphoric mood, sleep disturbance, nervousness, anxiousness,

claustrophobia, hypervigilance, pacing, and avoidance of crowds support Dr. Meharg's medical

opinion. Plaintiff does not dispute, however, that Dr. Meharg's opinion conflicts with other

evidence in the record. Because the ALJ provided specific and legitimate reasons—that

Dr. Meharg's opinion lacked consistency with other evidence in the record noted by the ALJ—

the Court will not disturb the ALJ's rational reading of the record. *See Burch*, 400 F.3d at 679

("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

conclusion that must be upheld."). The ALJ therefore did not err by discounting Dr. Meharg's

opinion about Plaintiff's ability to interact with supervisors, coworkers, and the public.

 Plaintiff also argues that the ALJ erred by failing specifically to address Dr. Meharg's

opinion that Plaintiff had a moderate limitation in her ability to respond to changes or pressures

in a work setting. Under the new regulations, however, an "ALJ is not required to articulate how

he 'considered all of the factors for all of the medical opinions' and will instead articulate how

he considered those opinions 'together in a single analysis using the factors'" established in the

new regulations, including consistency and supportability. *Mark M. M. v. Saul*, 2020

WL 2079288, at *4 (D. Mont. Apr. 29, 2020) (quoting 20 C.F.R. §§ 404.1520c(b)(1),

416.920(b)(1)); *see also* 20 C.F.R. § 416.920c(b)(1) ("[W]hen a medical source provides

multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we

considered the medical opinions or prior administrative medical findings from that medical

source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of

this section, as appropriate."). The ALJ articulated sufficient reasons to discount Dr. Meharg's

opinions and did not need separately to articulate why his opinion about Plaintiff's ability to

respond to changes was not supported by or consistent with evidence in the record. *See* 20 C.F.R.

§ 416.920c(b)(1).

**D.  Plaintiff's Testimony**

A claimant "may make statements about the intensity, persistence, and limiting effects of

his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step

process for evaluating a claimant's testimony about the severity and limiting effect of the

claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must

determine whether the claimant has presented objective medical evidence of an underlying

impairment 'which could reasonably be expected to produce the pain or other symptoms

alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.

Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not

show that her impairment could reasonably be expected to cause the severity of the symptom she

has alleged; she need only show that it could reasonably have caused some degree of the

symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying step one of the framework. AR 20. At step two, the ALJ determined that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms "were not entirely consistent with the medical evidence and other evidence in the record." *Id.* Because there was no evidence of malingering, the ALJ's decision to discredit Plaintiff's symptom testimony will be upheld only if the ALJ identified clear and convincing reasons to do so. *See Lingenfelter*, 504 F.3d at 1036. The ALJ discounted Plaintiff's symptom testimony because it conflicted with objective medical evidence and conflicted with her activities of daily living. AR 22. For the reasons below, these reasons were insufficient bases to discredit Plaintiff's testimony.

### 1. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and

completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

With respect to plaintiffs with an impairment of fibromyalgia, daily activities that include household chores such as doing laundry, washing dishes, mopping, and vacuuming do not conflict with pain testimony if the plaintiff had "repeatedly and consistently" noted severe limitations in completing those tasks. *See Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (concluding that the plaintiff's report that she could complete household chores, albeit with severe limitations due to her fibromyalgia, did not contradict with her symptom testimony of pain); *see also Stramol-Spirz v. Saul*, 848 Fed. App'x 715, 717 (9th Cir. 2021) (concluding that the plaintiff's symptom testimony related to fibromyalgia did not conflict with her performance of household chores because she described her limitations in her function report and at the hearing). A plaintiff's ability to complete household chores does conflict with symptom testimony related to fibromyalgia, however, if the plaintiff had not qualified his or her ability to complete those tasks or was "equivocal" in his or her ability to "keep up with" those activities.

*See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (concluding that the ALJ did not err

by discounting the plaintiff's symptom testimony related to fibromyalgia because it conflicted

with her daily activities, which included "attending to the needs of her two young children,

cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every

week"); *see also Roberts v. Berryhill*, 734 Fed. App'x 489, 491 (9th Cir. 2018) ("A claimant's

completion of certain household tasks can provide a valid reason for discounting her inconsistent

symptom allegations, even in the specific context of fibromyalgia pain."); *Revels*, 874 F.3d

at 668 (distinguishing *Rollins*, 261 F.3d 853).

The ALJ rejected Plaintiff's symptom testimony in part because it conflicted with her

activities of daily living. Plaintiff stated that she experiences "lots of pain" and cannot stand, sit,

or lay down for very long. AR 326. Plaintiff also testified that she cannot "lay still." AR 41. The

ALJ explained that Plaintiff's ability to exercise, prepare meals, do laundry, wash dishes,

vacuum, mop, weed the yard, hunt for rocks, take care of herself, take care of her grandchildren,

and work as a caregiver conflicts with her pain testimony. AR 22. Plaintiff, however, repeatedly

qualified her ability to complete those tasks with her persistent pain. She testified in a prior

hearing that she manages to take care of her grandchildren only because they are "blood" and she

"can deal with them" but could not care for non-family member's children because children "get

on her nerves" and she can't stand, sit, or lay down for very long. AR 82-83. As a caretaker,

Plaintiff reminds the woman she cares for to take her medication, makes her "little meals" such

as "a waffle," does the dishes, vacuums, mops, and keeps the woman company. AR 43. In her

function report, Plaintiff stated that everything she tries to do "hurts and takes longer," that she

"work[s] through the pain," and that she takes pain pills so she "can try and do daily tasks."

AR 327. She stated that she only cooks simple meals such as frozen dinners because it is too

difficult to bake and cook full dinners as she had done in the past. AR 328, 331. She also stated

that she can only wash the dishes while sitting because it hurts to stand too long. AR 327.

Plaintiff stated that it "hurts to move" but she does it anyway, and sometimes her best friend will

brush her hair because it hurts to lift her arms. AR 328. Because Plaintiff repeatedly and

consistently described severe limitations in her ability to complete the activities of daily living

identified by the ALJ, the ALJ's decision to discount Plaintiff's testimony on that basis is not

supported by substantial evidence. *See Revels*, 874 F.3d at 667-68.

### 2. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor

in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony only because the

objective medical record did not fully corroborate the testimony. *Robbins*, 466 F.3d at 883; *see

also Reddick*, 157 F.3d at 722 ("Commissioner may not discredit the claimant's testimony as to

the severity of symptoms merely because they are unsupported by objective medical

evidence"); 20 C.F.R. § 416.929(c)(2) (noting that the Commissioner "will not reject your

statements about the intensity and persistence of your pain or other symptoms or about the effect

your symptoms have on your ability to work solely . . . because the available objective medical

evidence does not substantiate your statements").

The ALJ rejected Plaintiff's symptom testimony in part because it was not supported by

the objective findings from Dr. Derek Leinenbach's examination. AR 22. Plaintiff stated that she

experiences a loss of feeling in her hands and that it is difficult for her to "hang on to things."

AR 326. During Dr. Leinenbach's examination, however, Plaintiff could "reach for, grip and

hold objects securely to the palm by the last three digits," could "manipulate large and small

objects with the first three digits," demonstrated that "[b]oth thumbs function with normal

opposition," and she had intact "[s]ensation to light touch and pinprick" in both hands. AR 1152.

Thus, Dr. Leinenbach opined that Plaintiff had "no reaching, handling, fingering, or feeling

limitations." AR 1153.

Because the ALJ gave no other acceptable reason for discounting Plaintiff's subjective

testimony, the fact that it was not supported by objective medical evidence cannot, by itself,

suffice as a clear and convincing reason. Accordingly, the ALJ erred in evaluating Plaintiff's

testimony.

### 3. Harmless Error

An error is harmless if it is "inconsequential to the ultimate nondisability determination."

*Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting

that an error is harmless if it is "clear from the record the error was inconsequential to the

ultimate non-disability determination"). A court should not automatically reverse on account of

error, but should make a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th

Cir. 2012). "Determination of prejudice requires 'case-specific application of judgment, based

upon examination of the record,' not 'mandatory presumptions and rigid rules.'" *Id.* (quoting

*Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). These case-specific factors are "various" and

potentially include, among others:

> an estimation of the likelihood that the result would have been
> different, an awareness of what body (jury, lower court,
> administrative agency) has the authority to reach that result, a
> consideration of the error's likely effects on the perceived fairness,
> integrity, or public reputation of judicial proceedings, and a
> hesitancy to generalize too broadly about particular kinds of errors
> when the specific factual circumstances in which the error arises
> may well make all the difference.

*Shinseki*, 556 U.S. at 411-12.

The party claiming error has the burden "to demonstrate not only the error, but also that it affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural rights." *Ludwig*, 681 F.3d at 1054. Additionally, a reviewing court can determine, based on the circumstances of the case, that further administrative review is required to determine whether there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Mere probability of prejudice is not enough, but where there is a substantial likelihood of prejudice, then remand is appropriate. *Id.*

The ALJ's decision to discredit Plaintiff's symptom testimony was not harmless error because Plaintiff testified to symptoms and limitations not incorporated into her RFC. For example, Plaintiff stated that her symptoms limit her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. AR 331. Plaintiff's RFC, however, states that she can "frequently climb ramps and stairs" and can "frequently stoop, kneel, crouch and crawl." AR 18. Because the RFC did not properly account for Plaintiff's symptom testimony, the ALJ's error was not harmless. *See Samuel Shane W. v. Comm'r of Soc. Sec.*, 2021 WL 1963618, at *5 (D. Or. May 17, 2021) (remanding for further proceedings to incorporate the plaintiff's erroneously discredited symptom testimony into his RFC).

## E.  Step Five

Plaintiff argues that she should be found disabled because she is limited to sedentary work and because the Vocational Expert testified that an individual who is off task 15 to 20 percent of the time or misses at least 16 hours of work each month is not eligible to maintain competitive employment. Plaintiff, however, only summarily states that she is limited to sedentary work based on her symptom testimony. Plaintiff does not identify which portions of her testimony require a finding that she is limited to sedentary work and thus disabled under the Medical-Vocational Guidelines. Additionally, Plaintiff has not pointed to any evidence in the

record establishing that she would be off task at least 15 percent of the time or would miss at least 16 hours of work per month. The Court will not sift through the record. *See Scull v. Comm'r of Soc. Sec.*, 2018 WL 2460196, at *5 (E.D. Wash. Mar. 16, 2018) ("It is not this Court's duty to comb the record in search of arguable support for Plaintiff's contention."). The ALJ therefore did not err in failing to find Plaintiff disabled based on these factors.

## F. Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court

retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ erred in evaluating Plaintiff's testimony. There remain, however, outstanding conflicts, issues, and ambiguities to be resolved, including a conflict between Plaintiff's testimony and Dr. Leinenbach's opinion. Remand for further proceedings is therefore appropriate.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 18th day of January, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge